**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>A 2000 JEEP GRAND CHEROKEE,<br>VIN. No. 1J4GW48N7YC303169,<br>LICENSE No. 70-J870,<br><br>　　　　Defendant,<br><br>MARIA DELEON,<br><br>　　　　Claimant. | **No. 07-CV-4114-DEO**<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

_____

The United States seized the grey 2000 Jeep Grand Cherokee Pablo A. DeLeon used in delivering one ounce of cocaine to an undercover informant and commenced this civil action to forfeit the vehicle under 21 U.S.C. § 881(a)(1) and (4). Pablo's mother, Maria DeLeon, the registered owner and title-holder of the Jeep, contests forfeiture on the ground that she is an innocent owner of the Jeep. See 18 U.S.C. § 983(a)(4), (d). Following a hearing, this Court granted partial summary judgment in favor of the Government on the issue of forfeitability, finding no genuine issue of material fact as to whether probable cause existed to forfeit the Jeep. The Court, however, denied summary judgment as to, and reserved ruling on, Ms. DeLeon's innocent ownership claim. Having taken evidence and heard arguments concerning this, the sole remaining issue at the May 15, 2009, bench trial, the

matter is now fully submitted.  As explained below, Ms. DeLeon is an innocent owner, and is thus entitled to return of the Jeep.

## I.  JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1355 and 1395 and 21 U.S.C. § 881(j) because a portion of the alleged acts giving rise to the forfeiture occurred in this district.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

After arranging the purchase of one ounce of cocaine from Gonzalo Topete-Santiago — a known cocaine and methamphetamine dealer in the northeastern Nebraska and northwestern Iowa area — an undercover informant met the delivery driver dispatched by Topete-Santiago in a Wal-Mart parking lot in South Sioux City, Nebraska.[1]  The informant gave the drug courier $1000 cash in exchange for the ounce of cocaine.  The courier, a male juvenile later identified as Pablo DeLeon, then returned to a grey 2000 Jeep Grand Cherokee bearing Nebraska license plate number 70-J870 — the defendant vehicle that is the subject of the instant action.  Pablo was then followed to Topete-Santiago's Sioux City residence — where officers had

---

[1] A more complete recitation of the facts can be found in the Court's October 2008 Order.  See Docket No. 17 at 4-8.

2

previously spotted him during surveillance — and finally to the DeLeon home.

Pablo DeLeon was arrested on state drug charges on July 10, 2007. After being *Mirandized*, the juvenile told DEA Task Force Officer Terry Kenny that he was the sole driver of the Jeep, and that he had used it on March 7, 2007, to deliver the cocaine to the informant at the direction of Topete-Santiago. Officer Kenny seized the Jeep and the DEA initiated administrative forfeiture proceedings.

Maria DeLeon — Pablo's mother, and the registered owner and title-holder of the Jeep — contested administrative forfeiture by submitting a claim and affidavit to the DEA. Docket No. 8-5 at 2-6.[2] The instant action began on December 28, 2007, after the United States filed a Verified Complaint in this Court. Docket No. 1. The matter was then referred to the U.S. Marshal for judicial forfeiture, and the Jeep was seized pursuant to a warrant of arrest of property *in rem*. Docket Nos. 3, 4.

In its April 16, 2008, motion for summary judgment, the United States conceded Ms. DeLeon is the registered owner and

---

[2] See 18 U.S.C. § 983(a)(2) (explaining procedure for filing a claim to contest nonjudicial forfeiture proceedings). Maria DeLeon also filed a hardship release claim, which was denied. See 18 U.S.C. § 983(f) (permitting release pending the completion of forfeiture proceedings in limited circumstances).

title-holder of the defendant vehicle, but argued DeLeon is merely a "straw owner" attempting to prevent law enforcement from seizing a vehicle paid for with drug proceeds and used to facilitate drug trafficking. Docket No. 8-2 at 8-10. Resisting the Government's motion, Ms. DeLeon contended she met the statutory definition of an innocent owner and submitted an affidavit and other records to support her asserted innocent ownership. Docket No. 12.

The records indicated DeLeon purchased the Jeep on November 12, 2006, with a $7,500 loan from Siouxland Federal Credit Union cosigned by her husband, David DeLeon, Sr. Docket No. 8-6 at 7. Payments were to begin on December 15, 2006, at $209.40 per month for 48 months. According to her affidavit, DeLeon's net income was $1,000 per month and her husband received monthly disability payments. Id. Yet just six months after DeLeon had taken out the loan, the balance of the $7,500 loan — about $5,000 by then — was paid in full and released by the credit union. Id.

In its summary judgment motion, the Government suggested that, given the DeLeon's stated income, and the speed with which they paid off the remaining $5,000 balance of the $7,500 lien, the outstanding balance of the loan used to purchase the Jeep "may not have been [paid off] with legitimate funds." Docket No. 8-2 at 4, 9. In response, DeLeon explained she

used part of a worker's compensation settlement award to pay off the balance of the loan, submitting copies of checks and other bank records documenting her explanation. Docket No. 12.

The Government further suggested that DeLeon was willfully blind to her son's illegal activities, thus defeating her innocent ownership claim. Docket No. 8-2 at 9-10. In response, DeLeon offered her sworn statement that she did not know her son used the Jeep to deliver drugs, as well as copies of earnings statements from Pablo's employer upon which she allegedly based her belief that her son was gainfully employed and was using the Jeep primarily to commute to and from work. Docket No. 12-3 at 2.

Finally, the Government argued it was entitled to summary judgment because DeLeon "did not have dominion or control over the [Jeep]," and thus lacked standing to contest its forfeiture. Docket No. 8-2 at 10. Consequently, even if DeLeon was technically the "owner" of the Jeep under state law, she was not an owner under the forfeiture statute, which dictates that "a nominee who exercises no dominion or control over the property" may not be an innocent owner. 18 U.S.C. § 983(d)(6)(B)(iii). In response, DeLeon contended she "let her son drive the Jeep so she would not have to provide him transportation to work and around town," and she "exercised

5

dominion and control [over the Jeep] by taking away [her son's] privileges to use the vehicle" when he was disobedient. Docket No. 12-2 at 3.

As previously noted, following a hearing this Court granted partial summary judgment in favor of the Government on the issue of forfeitability, finding no genuine issue of material fact as to whether probable cause existed to forfeit the Jeep. The Government had offered admissible evidence establishing that the Jeep had been used to commit or facilitate the commission of a federal drug crime, and DeLeon failed to identify a genuine issue of material fact concerning the forfeitability of the Jeep. Accordingly, the Court deemed the matter of forfeitability established in the action, thus relieving the Government of its initial burden at trial of proving by a preponderance of the evidence that the Jeep is subject to forfeiture.[3]

The Court, however, denied summary judgment as to the innocent ownership issue, finding DeLeon had set forth specific facts in her affidavit and other evidence submitted in resistance to the Government's summary judgment motion showing the existence of a genuine issue for trial. And

---

[3] See Fed. R. Civ. P. 56 advisory committee's note to subdivision (d), 1946 amendment ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case.").

because a finding of innocent ownership would ultimately depend on DeLeon's credibility, the Court indicated that only after a full trial could it appropriately reach the merits of DeLeon's innocent ownership claim.[4]  Thus, the only issue to be resolved at the bench trial appeared to be whether DeLeon's asserted ignorance of her son's illegal use of the Jeep was credible.

### III.  BENCH TRIAL

At the May 15, 2009, bench trial, Ms. DeLeon testified she purchased the Jeep in late 2006 mainly because her son, Pablo, needed a vehicle to get to and from his job at a hog confinement lot in Le Mars, Iowa.  DeLeon explained that Pablo generally departed for work at around 5:30 a.m. — typically the same time the couple woke Pablo's younger siblings, prepared breakfast, and readied the children for school, and shortly before DeLeon herself departed for work and her husband drove the children to school.  Quitting time for Pablo varied, but according to DeLeon her son usually returned home mid-afternoon, not long after his siblings returned from school.  DeLeon testified that, with roughly 30 miles separating South Sioux City and Le Mars, the DeLeon's had

---

[4] See Fed. R. Civ. P. 56 advisory committee's note to subdivision (e), 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.").

7

neither the time nor the gas money to chauffeur Pablo to-and-from work, so they decided to purchase the Jeep for his use.

DeLeon provided other reasons for the purchase during her testimony. Besides convenience and peace of mind, DeLeon testified she felt Pablo, then 17, would learn a thing or two about responsibility were he entrusted with such a major investment. DeLeon testified that prior to the purchase, her son had stopped attending high school after being suspended because of a fight, and had filled his days working at Burger King and nights studying for a GED. When Pablo was offered the more promising (and higher paying) job in Le Mars, DeLeon saw an opportunity to both encourage her son and foster his maturity.

In addition, DeLeon testified that the Jeep was a necessary addition to the DeLeon family's fleet of cars, as her husband's vehicle, an old Dodge pickup truck, often refused to start on cold mornings. According to DeLeon, her husband and Pablo began most mornings by attempting to coax the old Dodge into starting; if it refused to start, then the Jeep would take its place for the day, and Pablo would have to be dropped off at work or arrange otherwise.

Finally, DeLeon testified she saw the Jeep as a means of teaching her son the value of a dollar. To this end, she mandated that he contribute to the cost of monthly car and

insurance payments for the Jeep. DeLeon testified that each month, just after his paycheck arrived, Pablo made good on his promise, normally paying her around $300 — enough to cover the $209.40 monthly payment, but not insurance, which was relatively high given Pablo's young age.

Although Pablo's contributions apparently covered the first five payments on the Jeep, DeLeon testified it was understood that the Jeep did not belong to Pablo. In fact, DeLeon testified she often took away Pablo's driving privileges for misbehavior.[5] For example, she stated she took away driving privileges whenever Pablo violated his 11:00 p.m. curfew, allowing him to use the Jeep following such violations only to get to and from work. In fact, DeLeon testified she took away the Jeep for comparably less serious misbehavior, such as when Pablo failed to clean his room.

Overall, however, DeLeon's close supervision of her son rarely seemed to uncover serious misbehavior. She testified she routinely smelled Pablo's breath when he came home in the evening, but never detected alcohol. Like many parents of teenagers, DeLeon did not like some of Pablo's friends. But according to her testimony, she never suspected that Pablo used or dealt drugs, and she never observed him carrying any

---

[5] DeLeon also testified that Pablo disliked the Jeep and "did not want it," and that Pablo had been saving money to buy his own car.

9

sum of cash that exceeded his normal pay at his job in Le Mars. Indeed, DeLeon testified she tended to monitor Pablo's spending habits, and part of the reason she required his monthly contributions was to ensure that he spent his money on useful things that benefitted the family.

Still, during cross-examination by the Government, DeLeon conceded that Pablo indirectly made most, if not all, monthly payments on the Jeep, at least until she paid off the $5,000 balance of the loan with part of her settlement award at which point DeLeon would have made approximately five $209.40 payments using money "contributed" by Pablo, for a total of $1,047 in monthly payments.[6]

But $5,000 plus $1,047 equals $6,047 — $1,453 below the $7,500 in credit extended under the car loan. See Docket No. 8-6 at 7. Given that the loan was interest-bearing,[7] the

---

[6] DeLeon testified making monthly payments on the Jeep using money contributed by Pablo until about the time Pablo was arrested. Monthly payments of $209.40 commenced on December 15, 2006, and the balance of the loan was paid in full on May 4, 2007. See Docket No. 8-6 at 7 (copy of Loan and Security Agreement). Pablo was arrested on July 10, 2007. Docket 8-2 at 4. Thus, assuming Pablo indirectly paid the December through April 2006 payments, the total amount attributable to Pablo would be $1,047.

[7] The $7,500 loan had an annual percentage interest rate of 8.5%. Docket No. 8-6 at 7. The loan agreement does not, however, provide the amortization schedule (i.e., "the loan schedule showing both the amount of principal and interest that is due at regular intervals over the loan term and the remaining unpaid principal balance after each scheduled payment is made." Black's Law Dictionary 93 (8th ed. 2004))

$6,047 accounted for thus far would have fallen even further short of the outstanding balance of the loan than the above figure would reflect. This discrepancy was partially resolved by DeLeon's later testimony that she had made extra payments during this five-month period, but could not recall exactly how much extra she had paid. In any event, Ms. DeLeon's personal stake in the Jeep exceeded the $5,000 payment made on May 4, 2007.

## IV. DISCUSSION

Because the Court previously granted partial summary judgment in favor of the Government as to probable cause to forfeit the Jeep, the Government was relieved of its burden to establish at trial "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c).[8] The burden thus shifted to DeLeon at trial to demonstrate by a preponderance of the evidence that she is an innocent owner of the Jeep, meaning

> an owner who—

---

for the loan. Thus, the amount of principal indirectly paid through Pablo's contributions cannot be determined from the record before the Court.

[8] The Government was required to establish this "substantial connection" because the "Verified Complaint of Forfeiture In Rem" in this case (Docket No. 1) shows that "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense." 18 U.S.C. § 983(c)(3).

> > (I) did not know of the conduct giving rise to forfeiture; or
>
> > (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

18 U.S.C. § 983(d)(2)(A).[9]

After careful consideration, the Court concludes Ms. DeLeon is an innocent owner and the Government's request for forfeiture of the Jeep must be denied. The Court bases its decision on the following two findings.

First, the Court finds DeLeon is the legal and actual owner of the Jeep and at all relevant times has had unquestioned dominion and control over the vehicle. Under the forfeiture statute at issue here, "[o]wnership interests are defined by state law with one important exception—Congress has declared that 'a nominee who exercises no dominion or control over the property' may not be an innocent owner." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1015 (8th Cir. 2003). DeLeon is a resident of, and purchased the Jeep in, Nebraska. In Nebraska,

---

[9] DeLeon was required to establish either that she "did not know of the conduct giving rise to forfeiture" or that, "upon learning of the conduct giving rise to the forfeiture, [she] did all that reasonably could be expected under the circumstances to terminate such use of the property" because she claimed "a property interest in existence at the time the illegal conduct giving rise to the forfeiture took place." 18 U.S.C. § 983(d)(2)(A).

> no person acquiring a vehicle from the owner thereof . . . shall acquire any right, title, claim, or interest in or to such vehicle until the acquiring person has had delivered to him or her physical possession of such vehicle *and* (1) a certificate of title or a duly executed manufacturer's or importer's certificate with such assignments as are necessary to show title in the purchaser, (2) a written instrument as required by section 60-1417, or (3) an affidavit and notarized bill of sale as provided in section 60-142.01. *No waiver or estoppel shall operate in favor of such person against a person having physical possession of such vehicle and such documentation. No court shall recognize the right, title, claim, or interest of any person in or to a vehicle, for which a certificate of title has been issued in Nebraska, sold, disposed of, mortgaged, or encumbered, unless there is compliance with this section.*

Neb. Rev. Stat. § 60-140 (2006) (emphasis added). Here, DeLeon holds full ownership of the Jeep, as she took possession of the Jeep at the time of purchase and now holds title to the vehicle.[10] The fact that her son was the "primary driver" of the Jeep is immaterial, as is the fact that her son indirectly made payments on the vehicle. Ownership under section 60-140 cannot be transferred by operation of equitable doctrines such as estoppel or waiver; rather, one must be given possession *and* title to acquire an ownership interest. Id. § 60-140. And in light of the Eighth Circuit's

---

[10] That the loan and security agreement (Docket No. 8-6 at 7) lists DeLeon's husband as "Borrower 2" does not affect the Court's analysis.

13

clarification in United States v. One Lincoln Navigator 1998 that "[o]wnership interests are defined by state law" (328 F.3d at 1015), this Court cannot ignore section 60-140's directive that "[n]o court shall recognize the right, title, claim, or interest of any person in or to a vehicle, for which a certificate of title has been issued in Nebraska, sold, disposed of, mortgaged, or encumbered, unless there is compliance with this section."  Id. § 60-140.  In short, because DeLeon relinquished neither permanent possession nor title to the Jeep to her son, she owns the Jeep in full.

Moreover, despite Pablo's extensive use of the Jeep and monthly contributions, DeLeon's exercise of dominion and control over the Jeep precludes a finding that she was a mere "nominee" not entitled to raise the innocent owner defense. 18 U.S.C. § 983(d)(6)(b)(iii) (providing that the term "owner" "does not include . . . a nominee who exercises no dominion or control over the property.").  DeLeon expressly limited her son's use of the Jeep to certain permissible activities like commuting to work or socializing with friends, and she routinely revoked driving privileges for misbehavior. Moreover, DeLeon provided credible testimony that her son's use of the Jeep was often dependant on the driveability of her husband's truck — if the pickup refused to start on any given morning, David DeLeon, Sr. took possession of the Jeep for the

day, leaving Pablo to rely on his parents to drive him to work if he could not make other arrangements. Accordingly, DeLeon holds all ownership interest in the Jeep, despite her son's former usage and past contributions.

Second, and finally, the Court finds that Ms. DeLeon was neither involved in, nor aware of, the drug transaction that occurred on March 7, 2007, or for that matter any other illegality facilitated by her son's use of the Jeep. Under the forfeiture statute at issue here, "the term 'innocent owner'" includes "an owner who . . . did not know of the conduct giving rise forfeiture." 18 U.S.C. § 983(d)(2)(A)(I). DeLeon testified that, prior to her son's arrest, she did not know or have reason to believe her son would engage in the illegal activity giving rise to the forfeiture. The Government has provided no evidence to the contrary.[11] While DeLeon bears the burden of establishing innocent ownership, the overwhelming weight of the evidence supports DeLeon's contention that she had nothing to do with the drug delivery and that she neither knew, nor had any reason to believe, that

---

[11] The Government's summary judgment motion did provide Pablo's criminal record, which prior to his July 2007 arrest consisted entirely of non-drug related arrests. Docket No. 8-2 at 5. However, without additional facts suggesting the arrests related to drug activity, these arrests could not have placed DeLeon on notice of criminal drug activity by her son or obligated her to take additional steps to prevent his use of the Jeep to assist such illicit conduct.

her son had been or was likely to be involved in any drug use or drug transactions. Having found this aspect of her testimony credible, the Court finds DeLeon has proven by a preponderance of the evidence that she is an innocent owner within the meaning of 18 U.S.C. § 983(d).

## V.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

> (1) Judgment be entered in favor of the Defendant, a 2000 Jeep Grand Cherokee, VIN. No. 1J4GW48N7YC303169, License No. 70-J870, and the Claimant, Maria DeLeon and against the United States of America.
>
> (2) The United States of America shall permit the Claimant, Maria DeLeon, to recover the Defendant Jeep from wherever it is being held forthwith.

**IT IS SO ORDERED** this 4th day of June, 2009.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa